# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

**CRYSTAL F. TUCKER and KELLY BRUMLEY**　　　　　　　　　　**PLAINTIFFS**

**V.**　　　　　　　　　　　　　　　　　　　　**CAUSE NO.: 2:17-cv-02942**

**CORRECT CARE SOLUTIONS, LLC, GARY**
**SOILEAU, ANITA BARBEE, and BILL KISSELL**　　　　　　　　**DEFENDANTS**

## COMPLAINT
(Jury Trial Demanded)

COME NOW, Plaintiffs Crystal F. Tucker and Kelly Brumley (hereinafter "Plaintiff Crystal," "Plaintiff Kelly," or collectively "Plaintiffs"), by counsel, and files this their *Complaint* for damages against Defendants CORRECT CARE SOLUTIONS, LLC, GARY SOILEAU, ANITA BARBEE, and BILL KISSELL (hereinafter "Defendant CCS," "Defendant Soileau," "Defendant Barbee," "Defendant Kissell," or collectively "Defendants") and for cause would show unto the Court the following:

## **PARTIES**

1. Plaintiff Crystal is an adult resident citizen of Hinds County, Mississippi, residing at 35 Village Green Circle, Jackson, MS 39211.

2. Plaintiff Kelly is an adult resident citizen of Fayette County, Tennessee, residing at 1785 Rehoboth Road, Somerville, TN 38068.

3. Defendant CCS is a foreign corporation, qualified to do business in the State of Tennessee, and it may be served with process upon its registered agent, Corporate Creations Network, Inc., at 205 Powell Place, Brentwood, TN 37027.

4. Defendant Soileau is an adult resident citizen of the State of Tennessee, and he may be served with process at 5955 Bridle Path Drive, Memphis, TN 38134. At all relevant times herein, Gary Soileau was the Health Services Administrator at Correct Care Solutions.

5. Defendant Barbee is an adult resident citizen of the State of Tennessee, and she may be served with process at her place of employment at 1085 Mullin Station Road, Bartlett, TN 38134. At all times relevant herein, Anita Barbee was the Director of Nursing at Correct Care Solutions.

6. Defendant Kissell is an adult resident of the State of Tennessee, and he may be served with process at his place of employment, located at 1283 Murfreesboro Road, Nashville, TN 37217. At all times relevant herein, Bill Kissell was the Regional Vice President, Jail Operations at Correct Care Solutions.

## JURISDICTION and VENUE

7. This action is being brought pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343(a)(3) and 42 U.S.C §1983 and includes any and all state law claims pled herein for which jurisdiction and venue attach.

8. Venue is proper in the Western District of Tennessee, pursuant to 28 U.S.C. §1391 since a substantial part of the events and omissions giving rise to this claim occurred in this judicial district.

## FACTS

9. At all times material hereto, Defendants Soileau, Barbee, and Kissell were employees of Correct Care Solutions, acting within the scope of their employment.

10. On or about November 12, 2013, Plaintiff Crystal was hired as Assistant Director of Nursing within Defendant CCS. Plaintiff Crystal's contract was not set to expire until

June 30, 2014. On or about November 28, 2011, Plaintiff Kelly was hired as QI/Infection Control RN within Defendant CCS.

11. Since the commencement of her employment on November 12, 2013, Plaintiff Crystal noticed significant discrepancies regarding the medical treatment of the inmates and the acts and/or omissions of her nursing staff. Plaintiff Crystal made several complaints to Defendants Soileau and Barbee regarding her concerns, and she was completely dismissed.

12. One of the primary issues that Plaintiff Crystal complained of was nursing staff failing to flush inmate KEMPORT's in a timely manner because it could result in death. This was reported to Defendant Soileau in Ms. Tucker's June report and noted that she would perform the procedure on the inmates. Defendant Soileau **forbid** her from completing this task, claiming she was unqualified and not licensed.

13. On February 19, 2014, Defendant Barbee attempted to give Plaintiff Crystal an unsatisfactory evaluation and extending her probationary period because she allegedly failed to complete her required portion of training and orientation. As a result, Plaintiff Crystal took said evaluation to the attention of administration and her probationary period was NOT extended. Additionally, after a review of her quality of work, attendance, an interaction with all staff/inmates, Defendant Barbee was required to revise her initial evaluation to reflect that Ms. Tucker's satisfactory completion of her probationary period, despite the fact that Defendant Barbee failed to complete Ms. Tucker's orientation and training of her many essential duties.

14. As a result of being forced to retract her initial evaluation of Ms. Tucker, Defendant Barbee retaliated by attempting to show that Ms. Tucker was not monitoring the urine

control logs, which was proven to be monitored by the 11-7 shift main clinic nurses. The previous ADON was never made responsible for urine control logs.

15. Thereafter, Plaintiff Crystal became aware of suspicious emails that Defendant Soileau was sending regarding the elimination of her position with the company. Prior to Ms. Tucker's complaints regarding patient care and seeking guidance from the Regional Director of Nursing, Lisa Mason, there were no correspondence about eliminating her position.

16. On July 2, 2014, Plaintiff Crystal was informed that her job was being "eliminated." She did not receive any advance notice of her job elimination unlike her co-Plaintiff, Kelly Brumley, a white RN, who was notified that her job was being eliminated and was granted a TRANSFER to a comparable position with increased wages. Ms. Brumley was promised the transfer and assured that no one else had any chance of having the job.

17. As a result of Plaintiff Crystal's position elimination, she received a significant pay cut, shift changes, and cut in her work hours. Defendant Soileau never assisted or attempted to assist Plaintiff Crystal in the transfer process as he did with Plaintiff Brumley.

18. On July 8, 2014, Defendants conspired via email correspondence to fabricate justification for the elimination of Ms. Tucker's position, as evidenced by the three (3) different versions of a letter justifying the elimination of Ms. Tucker's job.

19. On July 17, 2014, Plaintiff Crystal filed her initial EEOC charge of race, sex, and age discrimination as well as retaliation. Plaintiff Kelly, a white woman, assisted Plaintiff Tucker in her EEOC charge by providing a written statement to Michael S. Hollis, Senior Federal Investigator for EEOC, confirming Ms. Tucker's claims that black employees

were treated significantly different from white employees and confirming the validity of Ms. Tucker's concerns for administering of proper patient care within the facility.

20. Nevertheless on July 18, 2014, Plaintiff Crystal accepted the offer an open RN position and began working in AOC on the 3-11 shift, beginning on August 3rd and 4th.

21. Plaintiff Kelly provided her written statement to the EEOC in support of Ms. Tucker's claims on July 21st, 2014. On July 29th, 2014, Plaintiff Tucker's EOC charge was hand-delivered to SCDOC per Darnell Gatewood. By July 31st, 2014, SCDOC Director and personal friend of Defendant Gary Soileau, Rod Bowers, provided Plaintiff Tucker's charge and the witness statement of Plaintiff Kelly to Defendant Soileau.

22. On August 5th, 2014, Plaintiff Crystal requested to be placed on medical leave with the anticipated return date of August 18th, 2014, but Ms. Tucker was unable to return on August 18th. Therefore, on August 17th, 2014, she provided a doctor's excuse stating that she would not able to return to work until September 2nd, 2014.

23. Moreover, on August 5th, Defendant Soileau entered Plaintiff Kelly's office and made the following statement: "If you want to be successful, you surround yourself with good people. If you want to be unsuccessful, you surround yourself with unsuccessful people, so people should always be cautious about the company you keep." Plaintiff Kelly immediately became fearful of losing her job as a result of participating in an EEOC and EOC investigation as a witness for Plaintiff Crystal. Thereafter, Plaintiff Kelly began experiencing unsavory tasks that were responsibilities of other employees, refused a phone stipend (that all other employees were awarded), given extra on-call scheduling, inappropriate write-ups, exclusion from audit tools meetings that fall within her job responsibility, decrease in work evaluation reports, unjustified suspension, and became

aware of derogatory email correspondence concerning her employment. Prior to Plaintiff Kelly's cooperation with Plaintiff Crystal, she experienced NO discrimination or retaliation from anyone.

24. On September 3, 2014, Plaintiff Crystal requested to be moved from full-time to a PRN position via email correspondence to Defendant Soileau, which he denied. Defendant Soileau terminated Plaintiff Tucker on September 3rd, 2014, without consulting anyone from corporate. Instead, Defendant Soileau informed Defendant CCS of his decision via email correspondence. Plaintiff Tucker's termination was identified as "personal reasons."

25. Plaintiff Tucker's termination was in retaliation for her filing the EEOC charge on July 17, 2014. It had nothing to do with her work performance.

26. On October 24, 2015, Plaintiff Kelly was terminated for alleged "involuntary-attendance," but it was in retaliation for her complying with an EEOC and EOC investigation supporting Plaintiff Tucker. It had nothing to do with her work performance or attendance. Plaintiff Kelly filed her charge with the EEOC based on retaliatory discharge on September 22, 2014.

27. Although Defendant Kissell (Regional VP of Jail Operations Exchange) did not directly commit any of the actions mentioned above, he was fully aware of each incident and did nothing to correct it.

28. Plaintiffs were discriminated and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, because they engaged in the protected activity of voicing and filing a discrimination complaint with the Equal Employment Opportunity

Commission. As a result of filing discrimination charges against Defendants, Plaintiffs' employment were terminated.

## ADMINISTRATIVE PROCEDURE

29. On or about July 17, 2014 and September 22, 2014, Plaintiffs filed their separate charges of discrimination, satisfying the requirements of 42 U.S.C. §2000(e) with the EEOC in Memphis, Tennessee. Such charges were filed within one hundred and eighty (180) days after the last unlawful employment practice occurred.

30. The EEOC conducted an investigation on both claims. On September 22, 2017, the EEOC issued a determination. According to the determination, "the EEOC is unable to conclude that the information obtained establishes a violation of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge."

31. The *Complaint* is being filed within ninety (90) days of the Plaintiffs' receipt of the Notice of Right to Sue. Plaintiffs have complied with all statutory and administrative prerequisites to filing suit.

## CAUSE OF ACTION

### COUNT I
### SEX DISCRIMINATION

32. Plaintiffs re-allege all prior paragraphs of the *Complaint* as if set out herein in full.

33. Plaintiff Crystal is a member of a protected class who has been consistently subjected to actions creating a hostile environment for Plaintiff Crystal because of her gender and/or sex in violation of Title VII of the Civil Rights Act of 1964.

34. The acts and violations of Defendants resulting in a knowing, willful, and intentional violation of Plaintiff Crystal's rights guaranteed under Title VII of the Civil Rights Act of 1964. Such unlawful employment practices violate 42 U.S.C. §2000e-3.

35. As a direct and proximate result of Defendants unlawful and discriminatory conduct toward Plaintiff Crystal, Plaintiff Crystal has lost wages and benefits and has sustained other pecuniary loss.

36. Defendants' discriminatory practices, insults, contempt, and disdain have been demeaning to Plaintiff Crystal and have caused her to suffer deep pain, humiliation, anxiety, and emotional distress.

37. The unlawful actions of Defendants complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff Crystal.

## COUNT II
## RACE DISCRIMINATION

38. Plaintiffs re-allege all prior paragraphs of the *Complaint* as if set out herein in full.

39. Plaintiff Crystal is a member of a protected class who has been consistently subjected to actions creating a hostile working environment for Plaintiff Crystal because of her race in violation of Title VII of the Civil Rights Act of 1964.

40. The acts and violations of Defendants resulted in a knowing, willful, and intentional violation of Plaintiff Crystal's rights guaranteed under Title VII of the Civil Rights Act of 1964. Such unlawful employment practices violate 42 U.S.C. Section 2000e-3.

41. As a direct and proximate result of Defendants unlawful and discriminatory conduct toward Plaintiff Crystal, Plaintiff Crystal has lost wages and benefits and sustained other pecuniary loss.

42. Defendants' discriminatory practices, insults, contempt, and disdain have been demeaning to Plaintiff Crystal and have caused her to suffer deep pain, humiliation, anxiety, and emotional distress.

43. The unlawful actions of Defendants complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff Crystal.

## COUNT III
## RETALIATORY DISCHARGE

44. Plaintiffs re-allege all prior paragraphs of the *Complaint* as if set out herein in full.

45. Plaintiffs engaged in activity protected under Title VII of the Civil Rights Act of 1964. Defendants and agents and employees of Defendants, retaliated against Plaintiffs after they made reports of discrimination to the EEOC. Plaintiffs were retaliated against by unjustly subjecting them to unjust scrutiny, exclusions, and termination.

46. Defendants have no legitimate reason for any such acts.

47. Defendants' actions demonstrate a direct and causal connection between Plaintiffs invoking their constitutional rights and the resulting termination by their employer.

48. Such unlawful practices violate 42 U.S.C. Section 2000e-3.

## DAMAGES

49. As a consequence of the foregoing misconduct of Defendants, Plaintiffs sustained economic damages, pain and suffering, great mental stress, depression, insomnia, shock, and humiliation.

50. As a consequence of the foregoing conduct of Defendants, Plaintiffs have damages in an amount exceeding the jurisdictional requirements of the Court.

## RELIEF

51. Plaintiffs request that the Court issues the following relief:

a. Enter declaratory relief declaring that Defendants have engaged in sex discrimination, race discrimination, retaliation, and constitutional violations under 42 U.S.C. Section 1983;

b. Award Plaintiffs compensatory and punitive damages for all the mentioned causes of action in an amount to be determined by a jury of their peers;

c. Award Plaintiffs attorney's fees, cost and expenses of litigation; and

d. Award such other relief to which Plaintiffs may be entitled to under law.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand judgment against Defendants in an amount exceeding the jurisdictional requirements of this Court, all together with Court costs, including attorney's fees, plus pre and post judgment interest, and for any other relief which this Court deems just and proper.

Respectfully submitted, this the 29th day of December, 2017.

                                      **CRYSTAL TUCKER and KELLY BRUMLEY, PLAINTIFFS**

**By:**    */s/ Carlos E. Moore*
           **Carlos E. Moore, TNBR# 028649**

OF COUNSEL:

**TUCKER|MOORE GROUP, LLP**
306 Branscome Drive
P. O. Box 1487
Grenada, MS 38902-1487
662-227-9940 – phone
662-227-9941 – fax
Email: carlos@tuckermoorelaw.com